# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DEBORAH L. STUTSMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-09-142-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Deborah L. Stutsman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As set forth below, the decision of Commissioner is REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 27, 1960, and was forty-seven years old at the time of the administrative hearing. She has a ninth grade education and has worked as a truck driver and warehouse worker (Tr. 103). The claimant alleges she has been unable to work since December 15, 2002, because of lupus, dominant drusen, fibromyalgia and possible multiple sclerosis (Tr. 92).

## Procedural History

On July 8, 2005, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Lance K. Hiltbrand conducted an administrative hearing and found that the claimant was not disabled in an undated written opinion. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the ability to perform light work, *i. e.*, she could lift/carry 20 pounds occasionally and 10 pounds frequently but stoop only occasionally, and she experienced

moderate fatigue and discomfort (Tr. 31). The ALJ concluded that although claimant was unable to perform her past relevant work, she was nonetheless capable of performing other jobs in the national economy related to the skills acquired during her past relevant work, *i. e.*, chauffeur and car rental delivery driver. The ALJ thus concluded that the claimant was not disabled (Tr. 37).

## Review

The claimant contends that the ALJ erred: (i) by violating her due process rights; (ii) by failing to properly evaluate all the medical evidence; (iii) by posing an improper hypothetical to the vocational expert (VE); and, (iv) by failing to properly analyze her credibility. In light of new evidence submitted to and considered by the Appeals Council, the Court finds the claimant's second contention persuasive.

The ALJ determined that the claimant's insured status expired on December 31, 2004. The medical evidence prior to and around the expiration of the claimant's insured status reveals that she began receiving medical treatment at the Wellness Center of Southern Oklahoma (WCSO) around August 2003. The claimant was noted to be suffering from lupus and was prescribed Ultram, Vioxx, Biaxin, and Lorabid (Tr. 170). On February 11, 2005, claimant presented to Dr. Robert L. McArthur (on referral from her physician Dr. Baker Fore) reporting pain in her knees, arms and shoulders, and claiming that her hands and legs occasionally draw up (Tr. 192). She reported to Dr. McArthur that her pain had been "[w]orsening over the last year" and that her neck muscles "stay tight" (Tr. 192). The claimant submitted evidence to the Appeals Council

from her treating physician Dr. Stephen Hutchins, in which he wrote that claimant was severely impacted by joint, muscle, and neurological problems, and that claimant suffered from fatigue and malaise (Tr. 10). His opinion stated that the claimant was capable of continuously lifting up to five pounds, and frequently lifting up to ten pounds, essentially continuous use of her hands throughout a normal workday (Tr. 10-11). Dr. Hutchins also noted that claimant was capable of standing and/or walking up to two hours and sitting up to four hours in a normal workday (Tr. 11). He stated that his opinion was based on X-rays, MRIs, and lab results and was applicable beginning on June 1, 2003 (Tr. 10). The claimant also submitted evidence from neurologist Dr. Bharathy E. Sundaram, who found that claimant had an abnormal lupus panel on October 8, 2002, and noted that claimant suffered "from [an] autoimmune disorder . . . most likely lupus, and which will explain all the multitude of different complaints that the patient has" (Tr. 495).

The claimant appeared at the administrative hearing without counsel, and testified that her major health concerns were systemic lupus, depression, anxiety attacks, and fatigue (Tr. 513). The claimant stated that Dr. McArthur of the McBride Clinic treats her lupus with "a lot of medications for pain" and that her lupus "gets ugly sometimes" (Tr. 515). The ALJ elicited testimony about claimant's doctors and medical treatment and noted that he did not have recent medical evidence from most of the doctors that claimant mentioned. The claimant stated that she had previously asked for her medical records from Dr. Hutchins, but that his office would not give them to her (Tr. 517). The ALJ charged the claimant with the task of obtaining all of the medical records from the

doctors mentioned during the administrative hearing, noting that the claimant "can do it a lot faster than what [he] can do it because [he was] dealing with 500 cases" (Tr. 517). The ALJ also told the claimant that he would "make every effort to get them" and after he was in receipt of the records, he could set a supplemental hearing (Tr. 518). Nothing related to this was mentioned in the ALJ's opinion, and there was never a supplemental hearing held.

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is premised upon evidence submitted to the Appeals Council after the hearing. The Appeals Council must consider such additional evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the administrative hearing qualifies as new, material and chronologically relevant, but the Appeals Council considered it, and the Court therefore has no difficulty concluding that it does qualify.

First, evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). With the exception of evidence from Dr. Dean M. Sherry, M.D. (which was duplicative, as the ALJ discussed it in his written opinion), the evidence submitted by the claimant to the Appeals Council clearly was new evidence. In particular, the "Treating Physician's Clinical Assessment" completed by Dr.

Stephen Hutchins, M.D. (who treated claimant from 2005 through 2008) and the medical records from Dr. Bharathy E. Sundaram, M.D. (reflecting treatment prior to the last date of insurance on December 31, 2004) were neither duplicative nor cumulative because they were not presented to the ALJ prior to his decision. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). In other words, the evidence must "reasonably [call] into question the disposition of the case." *Id.*; *see also, Lawson v. Ch*ater, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). The ALJ relied, at least in part, on the basis that the "majority of the claimant's medical documentation was after her date last insured of December 31, 2004" (Tr. 36), and he afforded little weight to the opinion of the state consultative physician Dr. Saidi, because the "medical opinion [did] not address limitations prior to the date of last insured of December 31, 2004" (Tr. 36). But the assessment of treating physician Dr. Hutchins purports to assess the severity of claimant's impairments beginning on June 1, 2003, and Dr. Sundaram's records cover treatment from July 13, 2000 through October 8, 2002. Both suggest that the claimant has impairments more severe than the ALJ included in her RFC. Finally, the evidence is chronologically relevant when it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Further, although some of Dr. Hutchins' medical records do cover a period after the last insured date, "[e]vidence of the claimant's condition *after* the termination of insured status may be relevant to the

existence or severity of an impairment arising *before* termination. *See, e. g., Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

Since the evidence presented by the claimant after the administrative hearing *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b) and the Appeals Council considered it, such evidence "becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the ALJ's decision is not supported by substantial evidence for several reasons.

First, the ALJ's written decision denying benefits does not address the Treating Physician's Clinical Assessment completed by Dr. Hutchins. As he was clearly one of the claimant's treating physicians, the opinions expressed by Dr. Hutchins therein as to the claimant's functional limitations were entitled to controlling weight if they were "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373

F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If for any reason such opinions were not entitled to controlling weight, the ALJ was required to analyze the proper weight to give them by applying "all of the factors provided in [s] 404.1527." *Id.*, *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). The ALJ had no opportunity to perform this analysis, and the decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings. On remand, the ALJ should also assess the claimant's credibility in light of the new medical evidence and claimant's testimony regarding pain related to both fibromyalgia and lupus.

**Conclusion**

In summary, the Court finds that correct legal standards were not applied, and the Commissioner's decision is not supported by substantial evidence. Consequently, the decision of the Commissioner is hereby REVERSED and the case hereby REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of March, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma